PETER L. CARR, IV (#256104)
PCARR@THEPLCLAWGROUP.COM
NA'SHAUN L. NEAL (#284280)
NNEAL@THEPLCLAWGROUP.COM
LAUREN K. MCRAE (# 331296)
LMCRAE@THEPLCLAWGROUP.COM
PLC LAW GROUP, APC
3756 SANTA ROSALIA DR., SUITE #326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895
ATTORNEYS FOR PLAINTIFF
**GERARDO VALENZUELA**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO VALENZUELA,<br><br>Plaintiff,<br>vs.<br><br>CITY OF LOS ANGELES; OFFICER DAMIEN CASTRO (43443); OFFICER ERIC LOPEZ (44664); and DOES 1 THROUGH 20, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff GERARDO VALENZUELA complains of Defendants CITY OF LOS ANGELES, OFFICER DAMIEN CASTRO (43443), OFFICER ERIC LOPEZ (44664), and Does 1 through 20, inclusive, as follows:

**VENUE AND JURISDICTION**

1. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988. State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the City of Los Angeles, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

**PARTIES**

2. At all times in this Complaint, Plaintiff Gerardo Valenzuela (hereinafter "Plaintiff" and "Mr. Valenzuela"), was and is a resident of the State of California in the County of Los Angeles.

3. Defendant City of Los Angeles (hereinafter referred to as "CITY") is, and at all times in this Complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LOS ANGELES POLICE DEPARTMENT (hereinafter referred to as "LAPD") and its tactics, methods, practices, customs and usages.

4. At all relevant times mentioned herein and material hereto, the Defendant OFFICER DAMIEN CASTRO (43443) engaged in law enforcement as a police officer, sergeant, captain, lieutenant, agent and/or representative of the LOS ANGELES POLICE DEPARTMENT, and acted in the course and scope of his employment.

5. At all relevant times mentioned herein and material hereto, the Defendant OFFICER ERIC LOPEZ (44664) engaged in law enforcement as a police officer,

-2-
COMPLAINT

sergeant, captain, lieutenant, agent and/or representative of the LOS ANGELES POLICE DEPARTMENT, and acted in the course and scope of his employment.

6.    At all relevant times mentioned herein and material hereto, the Defendant Does 1 through 10 (hereinafter "DOES" and "Defendant DOE Officers") engaged in law enforcement as police officers, sergeants, captains, lieutenants, and/or civilian employees, agents and representatives of Defendant CITY, duly employed as police officers by the LAPD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

7.    Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.  The true names and capacities of DOES 1 through 20, inclusive, and each of them, are not now known to Plaintiff who, therefore, sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

8.    Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

9.    On April 24, 2024, Mr. Valenzuela parked in a gas station and took a phone call while seated in his vehicle.

10.    Defendant Officers Damien Castro (43443) and Eric Lopez (44664) pulled into the gas station in their marked patrol car.

11.    Defendant Officers Castro and Lopez approached Mr. Valenzuela's vehicle.

12.    Defendant Officers Castro and Lopez told Mr. Valenzuela that he was parked in a handicap parking spot.

13.    Surveillance footage from the gas station shows that Mr. Valenzuela was not

-3-
COMPLAINT

parked in a handicap parking spot.

14.    Defendant Officers Castro and Lopez requested Mr. Valenzuela's license, which Mr. Valenzuela complied in providing.

15.    When Defendant Officers Castro and Lopez asked Mr. Valenzuela for permission to search his vehicle, Mr. Valenzuela did not consent to a search.

16.    Defendant Officers Castro and Lopez threatened Mr. Valenzuela, saying, "If you do not get out, we are going to get you out of the vehicle."

17.    Defendant Officers Castro and Lopez made physical contact with Plaintiff to try to pull him out of his car.

18.    Defendant Officers Castro and Lopez called for backup. At least ten additional officers, Doe Officers #1-13, arrived.

19.    Doe Officers #1-13 unholstered their guns and aimed them at Plaintiff as they approached Mr. Valenzuela's car.

20.    Plaintiff complied with the officers' instructions to put his hands in the air.

21.    Defendant Officers unbuckled Plaintiff's seatbelt and dragged him out of his car.

22.    Defendant Officers threw Plaintiff to the ground, applied the pressure of their bodyweight to his back, searched Plaintiff, handcuffed Plaintiff, and put Plaintiff in the back of a patrol vehicle.

23.    Unlawfully, without a warrant, and without probable cause, Defendant Officers searched Plaintiff's vehicle.

24.    Officers recovered a firearm in Plaintiff's vehicle. This firearm had been left in Plaintiff's vehicle, without Plaintiff's knowledge, by a friend of his who had previously borrowed his car. Plaintiff was unaware of the firearm's presence in his vehicle until the time that officers recovered the firearm.

25.    Doe Officers charged Plaintiff with PC 29800(a)(1), being a felon in possession of a firearm, in addition to PC 1170.12, California's "Three Strikes" law.

26. Defendant Officers also falsely ticketed Plaintiff for parking in a handicap parking spot, a violation of VC 22507.8, and for ingesting alcohol in a moving vehicle, a violation of VC 23221.

27. Plaintiff violated neither of these vehicle codes, and the alleged vehicle code violations were dismissed.

28. The criminal charges against Plaintiff were dismissed in December 2024.

29. As a direct and proximate result of Defendant Officers' conduct described above, Mr. Valenzuela has suffered physical injuries, including pain and abrasions. Additionally, Mr. Valenzuela has suffered and continues to suffer severe mental and emotional injuries, including loss of liberty, humiliation, embarrassment, and anxiety.

**FIRST CAUSE OF ACTION**

**UNLAWFUL SEARCH & SEIZURE**

**(42 U.S.C. § 1983)**

**(Against Defendant Officers Castro, Lopez, and Does 1 through 20, inclusive)**

30. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

31. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment. Defendant Officers violated Plaintiff's Fourth Amendment Right by searching, detaining, and arresting Mr. Valenzuela without any legal justification. Defendant Officers further violated Plaintiff's rights by searching his vehicle and property without legal justification.

32. As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful search and seizure, or because they failed to intervene to prevent these violations.

33. The conduct of the Defendant Officers was willful, wanton, malicious and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

34. As a result of the Defendant Officers' conduct described above, Mr. Valenzuela suffered severe physical injuries. Additionally, Mr. Valenzuela has suffered and continues to suffer extreme emotional distress and severe mental anguish.

35. Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks attorneys' fees pursuant to 42 U.S.C. § 1988 and litigation costs under this claim.

**SECOND CAUSE OF ACTION**

**EXCESSIVE FORCE (42 U.S.C. § 1983)**

**(Against Defendant Officers Castro, Lopez, and Does 1 through 20, inclusive)**

36. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

37. Plaintiff's right to be secure in their persons against unreasonable seizures as guaranteed to Plaintiffs under the Fourth Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment, was violated when Defendant Officers used excessive force against Plaintiff, by:

      a. Dragging Plaintiff out of his vehicle;

      b. Throwing Plaintiff against the ground;

      c. Getting on top of and applying the pressure of their bodyweight to Plaintiff's body;

      d. Handcuffing Plaintiff; and

      e. Unholstering and aiming firearms at Plaintiff.

38. This use of force was excessive and unreasonable under the circumstances.

39. Both prior to and during the time in which the Defendants injured Plaintiff, Plaintiff posed no reasonable threat of violence or danger to the Defendants or to any other individual. Plaintiff made no aggressive movements, furtive actions or physical movements that would have suggested to a reasonable officer that Plaintiff was armed with any kind of weapon or had the will or the ability to inflict substantial bodily harm against any individual.

40. As a result of the aforementioned conduct, Plaintiff suffered physical injuries, including pain and abrasions. Additionally, Mr. Valenzuela has suffered and continues to suffer severe mental and emotional injuries, including loss of liberty, humiliation, embarrassment, anxiety.

41. As a result of the conduct of Defendants, they are liable for Plaintiff's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent the violative conduct.

42. The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

43. Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks attorneys' fees pursuant to 42 U.S.C. § 1988 and litigation costs under this claim.

## THIRD CAUSE OF ACTION

## FIRST AMENDMENT RETALIATION

## (42 U.S.C. § 1983)

## (Against Defendant Officers Castro, Lopez, and Does 1 through 20, inclusive)

44. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

45. All of the acts of Defendants were done under the color of state law.

46.    Defendant Officers Damien Castro (43443), Eric Lopez (44664), and Does #1-20, inclusive, deprived Plaintiff of his rights, privileges, and immunities under the First Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by forcibly detaining, handcuffing and arresting Plaintiff to retaliate against him for exercising his right not to consent to a search of his vehicle.

47.    Plaintiff's protected speech and conduct was a substantial or motivating factor in Defendants' decision to retaliate. This was demonstrated by, among other things, the fact that Defendants' aforesaid conduct, including but not limited to the use of excessive force, occurred immediately following or soon after protected activities.

48.    As a direct and proximate result of the aforementioned unlawful acts of Defendants, Plaintiff sustained and incurred damages for physical injury and pain, emotional injury and pain, mental anguish, suffering, humiliation, embarrassment, as well as harm to his reputation in the community.

49.    Each of the Defendants were both personally involved and an integral participant in the violation of Plaintiff's constitutional rights, because each officer was aware of unlawful actions of the others, did not object to these violations of Plaintiff's rights, and participated in the violations by performing police functions, including meaningful participation in the baseless arrest and needless use of force against Plaintiff.

50.    In doing the foregoing wrongful acts, Defendants each acted in reckless and callous disregard for Plaintiff's constitutional rights. Each wrongful act was willful, oppressive, fraudulent and malicious, thus warranting the award of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future similar misconduct.

51.    Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks

attorneys' fees pursuant to 42 U.S.C. § 1988 and litigation costs under this claim.

## FOURTH CAUSE OF ACTION

## DELIBERATE FABRICATION OF EVIDENCE

## (42 U.S.C. § 1983)

**(Against Defendant Officers Castro, Lopez, and Does 1 through 20, inclusive)**

52.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

53.    Defendants, while acting under color of law, deprived Plaintiff of his civil rights, more particularly his right to be free from deliberate fabrication of evidence.

54.    On information and belief, Defendant Officers deliberately fabricated evidence that was used to criminally charge and prosecute Plaintiff, including submitting false police reports in an effort to conceal their misconduct. The criminal charges against Plaintiff were eventually dismissed.

55.    On information and belief, the Supervisory Defendants are liable for Plaintiff's injuries because they approved their subordinates' misconduct and/or showed a callous disregard for Plaintiff's rights.

56.    Plaintiff brings this action under federal law. The constitutional source against deliberate fabrication is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from deliberate fabrication is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

57.    As a direct and proximate result of the aforementioned unlawful acts of Defendants, Plaintiff sustained and incurred damages for emotional injury and pain, mental anguish and suffering, humiliation, embarrassment, as well as harm to

his reputation in the community.

58.    In doing the foregoing wrongful acts, Defendants each acted in reckless and callous disregard for Plaintiff's constitutional rights. Each wrongful act was willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future similar misconduct.

59.    Plaintiff brings this claim individually and seek general and special damages in an amount to be determined at trial. Plaintiffs also seek reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION
## MALICIOUS PROSECUTION
### (42 U.S.C. § 1983)

**(Against Defendant Officers Castro, Lopez, and Does 1 through 20, inclusive)**

60.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

61.    Defendants, while acting under color of law, deprived Plaintiff of his civil rights, more particularly their right to be free from malicious prosecution.

62.    Defendants, contributed to, caused, and/or initiated a criminal prosecution against Plaintiff with malice and/or with the purpose of depriving them of their constitutional rights.

63.    Defendants contributed to, caused, and/or initiated that criminal prosecution without reasonable suspicion or probable cause.

64.    On information and belief, Defendant Officers made false statements in their reports to cover up Defendant Officers' unlawful stop and excessive force.

65.    On information and belief, the Supervisory Defendants are liable for Plaintiff's injuries because they approved their subordinates' misconduct and/or showed a callous disregard for Plaintiff's rights.

66.    Plaintiff was criminally charged based upon Defendant Officers' false representations regarding the subject incident. The charges against Plaintiff were eventually dismissed.

67.    Plaintiff brings this action under federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

68.    As a result of Defendants' malicious prosecution of Plaintiff, Mr. Valenzuela suffered loss of liberty and harm to his reputation. Plaintiff has also suffered and continue to suffer severe emotional trauma and extreme mental distress as a result of Defendants' malicious prosecution.

69.    The conduct of Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

70.    Plaintiff brings this claim individually and seeks general and special damages in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION

## MUNICIPAL LIABILITY FOR UNLAWFUL CUSTOM AND PRACTICE

### (42 U.S.C. § 1983)

### (Against Defendant CITY)

71.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

72.    Defendant CITY is and at all times herein mentioned, has been a public entity duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LAPD officers and their tactics, methods, practices, customs and usages.

73.    At all times herein mentioned, Defendant Officers and each of them, were employees acting under the direction and control of the LAPD, who knowingly and intentionally promulgated, maintained, applied, and enforced the continuation of policies, customs, practices and usages in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution. Such customs, policies, practices and usages at all times herein mentioned, required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace officers employed by the LAPD.

74.    The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant CITY include, but are not limited to:

    a. Failing to institute, execute, or enforce readily available procedures for decreasing the rise of erroneous detention/arrests of individuals;

    b. Failing to institute a quality control system that requires reliable verification to occur to prevent the wrongful arrest of innocent persons;

    c. Maintaining deliberately indifferent detention, search, and seizure practices, which enables officers to detain, search, and seize individuals in the absence of legal justification;

    d. Failing to train employees on maintaining lawful detention, search, and seizure practices;

-12-
COMPLAINT

e.  Failing to supervise and/or discipline officers or LAPD employees for reckless and/or negligent conduct that results in the violation of citizens' civil rights;

f.  Failing to institute, maintain, or effectively administer an appropriate training regimen on subjects such as: conducting reasonable, adequate, and thorough investigations; excessive force; search and seizure; traffic stops; racial profiling; and civil liberties.

g.  Failing to execute a regimen and policies that take into account the foreseeable consequences of setting into motion events that will cause the search, seizure, detention, and arrest of an individual without legal justification;

h.  Failing to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint, when the need for such was obvious;

i.  Failing to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint, when policymakers for the LAPD knew or had reason to know of the need, yet acted with deliberate indifference to the rights and safety of Plaintiff and the public;

j.  Refusing to adequately discipline individual employees found to have committed similar acts of misconduct;

k.  Refusing to investigate allegations of abuse and misconduct alleged to have been committed by LAPD employees;

l. Failing to adequately supervise the actions of employees under its control;

m. Failing to adequately supervise the actions of employees under its control;

n. Failing to adequately train its officers so as to avoid constitutional violations;

o. Condoning and participating in the practice of prosecuting groundless criminal charges for the purpose of insulating LAPD employees from civil liability and reducing or dismissing criminal charges against individuals in return for releasing them from civil liability;

p. Tacitly condoning and and encouraging a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

q. Tacitly condoning and encouraging the use of excessive force on citizens, including the unlawful use of tasers and other less-lethal weapons;

r. Tacitly condoning and encouraging retaliatory arrests and harassment of individuals exercising their First Amendment rights;

s. Tacitly condoning and encouraging an atmosphere of lawlessness, abuse and misconduct, which by April 24, 2024, and thereafter, represented the unconstitutional policies, practices and customs of the CITY.

75.    The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendant CITY:

a. In 2010, LAPD rounded up and interrogated fifty-six Latino high school students with no legal justification and based solely on the students' race.

-14-
COMPLAINT

Because of this discrimination, the American Civil Liberties Union filed a class action lawsuit against the CITY and the school in 2011.[1]

b. In 2019, LAPD officers followed driver Hasmik Chinaryan for over ten minutes before initiating a high-risk traffic stop, despite Chinaryan's lawful operation of her vehicle. Officers held Chinaryan, her daughter, and a third passenger at gunpoint, handcuffed them, and searched the vehicle. The officers had mistaken hers for a stolen vehicle.[2]

c. Black Army veteran Slade Douglas was subjected to unlawful search of his home, false arrest, excessive force, and forced hospitalization after calling 911 in August 2019. LAPD Officers Jeremy Wheeler and Jeffrey Yabana were found not entitled to qualified immunity for constitutional violations including unlawful detention, excessive force, retaliation and due process violations.[3]

d. Officers unlawfully arrested and used excessive force against Antone Austin, who is African American, in May 2019 after confusing him for a white man accused of violating a restraining order. His lawsuit settled in 2021 for an undisclosed amount.[4]

e. During Black Lives Matter protests following George Floyd's death, LAPD officers systematically used excessive force against peaceful protesters through unlawful deployment of rubber bullets, bean bag rounds, batons, and pepper spray. In *Black Lives Matter Los Angeles v. City of Los Angeles*, protesters alleged the LAPD used excessive force, arrested protesters without probable cause, and restricted their First Amendment rights. Deon Jones was awarded $375,000 by a jury that found his rights were violated when he was struck in the face by an LAPD projectile during

[1] "Lawsuit over police roundup of Latino students," ACLU, October 13, 2011, https://www.aclusocal.org/en/press-releases/lawsuit-over-police-roundup-latino-students.
[2] *Hasmik Jasmine Chinaryan, et al. v. City of Los Angeles, et al.,* 2:19-cv-09302-MCS-E.
[3] "$30 Million Retaliation, Sexual Assault & Torture Case Against LAPD," Texas Metro News, October 25, 2025.

-15-
COMPLAINT

a peaceful demonstration.[5] David Bond received a $300,000 settlement after losing part of a testicle when shot by police with a less-lethal projectile during a peaceful protest.[6]

f. In 2020, CITY residents filed a class action lawsuit against the CITY after they had been falsely linked to gang activity through the gang association database, CalGangs, which contained questionable information and had been misused by CITY employees. The database became a form of racial profiling, and the majority of those entered into it were Black and Latino men. The database was suspended. The District Attorney subsequently filed a criminal complaint against three CITY officers for conspiring to falsify police report, and the LAPD investigated at least twenty-four officers for similar charges.[7]

g. In 2021, actor and director Damien Smith, a Black man, called 911 to report an intruder in his apartment. When LAPD officers arrived, they tased Smith approximately three times instead of apprehending the actual intruder. Smith had dropped a knife when asked and identified himself as the resident, but officers still used their tasers on him. Smith filed a lawsuit alleging racial profiling and First Amendment retaliation after the officers targeted him for exercising his right to seek police assistance. [8]

h. In June 2022, the CITY settled a lawsuit wherein Christopher Martin, an African American man, asserted that he was racially profiled, unlawfully arrested/detained, unreasonably searched and subjected to unlawful discrimination during a traffic stop based on allegedly matching a suspect description.

---

[4] "Music Producer's Racial Profiling Suit Against L.A. Tentatively Settled," Los Angeles Sentinel, June 4, 2021.
[5] "Gibson Dunn Announces Historic Civil Rights Settlement," Gibson Dunn, July 31, 2023.
[6] "LA to pay $300K to man who lost part of testicle after being shot by police during protest," Fox KTVU, April 28, 2022.
[7] "Case: Ochoa v. Los Angeles," Civil Rights Litigation Clearinghouse, https://clearinghouse.net/case/17758/.
[8] "Larson files $20 million lawsuit alleging racially motivated traffic stop and assault," Larson, LLP, March 17,

-16-
COMPLAINT

i. On January 3, 2023, LAPD officers repeatedly tased 31-year-old Keenan Anderson six times in 42 seconds during a traffic stop incident, resulting in his death hours later. Anderson, a Black man, had sought help from police after a car accident. The family filed a $100 million wrongful death lawsuit against the City.

j. 'The Board of Police Commissioners found that two officers involved in Mr. Anderson's death violated LAPD policy by applying pressure to Mr. Anderson's neck. Further, the Board found that Mr. Anderson did not pose an imminent threat.[9]

k. LAPD Commander Natalie Cortez filed a whistleblower retaliation lawsuit in May 2025 alleging she was demoted after raising concerns about officers' failure to turn on body-worn cameras and providing false information to the Police Commission. Captain Johnny Smith filed similar retaliation claims in February 2022 alleging retaliation over complaints about noncompliance with body-worn cameras and officers' use of bean bag rounds on protestors in 2020.[10]

l. During the "No Kings" protests in June 2025, LAPD officers systematically used excessive force against peaceful protesters, including rubber bullets, bean bag rounds, tear gas, batons, and pepper balls. Marshall Woodruff was shot in the eye with a rubber bullet, fracturing his cheek and tearing part of his eye open, requiring hours of surgery with questionable vision recovery. Multiple journalists were targeted with "less-lethal" bullets despite being clearly identified as press. Clifton Johnson, a passerby, was shot in his hand, causing a fractured wrist and nerve

2022.

[9] "Keenan Anderson: Police board finds 2 officers violated use of force policy," Fox 11, October 25, 2023.

[10] Sean Beckner-Carmitchel, "LAPD falsified reports and punished whistleblower, lawsuit claims," Los Angeles Polic Press, May 20, 2025.

damage.[11]

m.    A 2008 study published by the American Civil Liberties Union found that, from 2003 to 2004, the LAPD stopped Hispanic and Black residents at significantly higher rates than White residents. Hispanic and Black residents were also more likely to be searched, frisked, and arrested. Meanwhile, the same study found that Hispanic and Black residents were less likely to have a weapon when frisked compared to White residents who were subjected to a frisk.[12]

n. These racial disparities persist over a decade later. In October 2019, the results of an analysis by the Los Angeles Times revealed that LAPD officers search Black and Latino people far more than Whites during traffic stops, despite the fact that officers are more likely to find illegal items on White residents. According to the study, 16% of Latino drivers and passengers were searched, compared with 5% of Whites. Yet, when searched, White people were found to have illicit items more often than Latino people.[13]

o. A LAPD arrests map based on data from 2019 to 2022 found concrete evidence that Black and Hispanic/Latino people are disproportionately arrested compared to their white counterparts. Despite Black and Hispanic/Latino individuals representing 56% of the Los Angeles population, they made up about 78% of all arrests during the period studied.[14]

p. Of over 17,000 civilian complaints made between 2016 and 2022, only 5%

---

[11] Sid Garcia, "Protester shot in the eye with rubber bullet," ABC 7, June 17, 2025.
[12] Ian Ayres, "A Study of Racially Disparate Outcomes in the City of Los Angeles Police Department," *ACLU,* October 2008, https://www.aclusocal.org/sites/default/files/wp-content/uploads/2015/09/11837125-LAPD-Racial-Profiling-Report-ACLU.pdf.
[13] Ben Poston and Cindy Chang, "LAPD searches Blacks and Latinos more," *Los Angeles Times*, October 2019, https://www.latimes.com/local/lanow/la-me-lapd-searches-20190605-story.html.
[14] Sharla Steinman, "Los Angeles arrest map shows disproportionate rates for people of color, Daily Bruin, September 24, 2023, https://dailybruin.com/2023/09/24/los-angeles-arrest-map-shows-disproportionate-rates-of-

-18-
COMPLAINT

were ruled in favor of civilians. During the same period, 0% of all complaints of police discrimination were ruled in favor of civilians.[15]

76. The decisions of the Officers to unlawfully detain, use excessive force against, and arrest Mr. Valenzuela without justification represents a larger systemic issue of predatory policing and a culture among LAPD that encourages violence and harassment, particularly towards Latino residents of Los Angeles who are exercising their constitutional rights.

77. CITY had actual notice that its Officers were ill-prepared and biased in respect to field contacts with Latino men and the use of physical force against Latino men.

78. By reason of the aforesaid policies, customs, practices and usages, Plaintiff's rights under the First, Fourth and Fourteenth Amendments of the United States Constitution were violated.

79. On information and belief, Defendant Officers involved in the aforementioned incident have not been adequately disciplined by Defendant CITY or LAPD for their actions against Plaintiff.

80. On information and belief, the escalation of a simple question into a violent arrest and tasing was ratified by Defendant CITY and LAPD by failing to discipline any officer involved or modify training to address this type of situation in the future.

81. Defendant CITY has acted with deliberate indifference to Plaintiff's constitutional rights. As a proximate result of these acts, Plaintiff's constitutional rights have been violated, causing him to suffer physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

82. On information and belief, Defendant Officers involved in the

arrests-for-minorities.
[15] "Los Angeles Police Department," Police Scorecard, https://policescorecard.org/ca/police-department/los-angeles.

aforementioned incident have not been reprimanded or sanctioned by Defendant CITY or LAPD for their actions against Plaintiff.

83.    On information and belief, the extreme escalation of a verbal command into a violent arrest was ratified by Defendant CITY and LAPD by failing to discipline any officer involved or modify training to address this type of situation in the future.

84.    Defendant CITY has acted with deliberate indifference to Plaintiff's constitutional rights. As a proximate result of these acts, Plaintiff's constitutional rights have been violated, causing him to suffer physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

85.    Accordingly, the CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983. Plaintiff also seeks attorneys' fees pursuant to 42 U.S.C. § 1988 and litigation costs under this claim.

-20-
COMPLAINT

**PRAYER**

WHEREFORE, PLAINTIFF requests entry of judgment in his favor and against Defendants as follows:

1. For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2. For special damages according to proof;

3. For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4. For prejudgment interest;

5. For attorney's fees pursuant to 42 U.S.C. § 1988 & California Civil Code § 52.1 (h);

6. For reasonable costs of this suit incurred herein;

7. For such other and further relief as the Court may deem just, proper and appropriate.

Dated:  March 13, 2026                    **PLC LAW GROUP, APC**

                                          */s/Na'Shaun L. Neal*
                                          Peter L. Carr, IV
                                          Na'Shaun L. Neal
                                          Lauren K McRae
                                          *Attorneys for Plaintiff*
                                          *Gerardo Valenzuela*

-21-
COMPLAINT

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

Dated:  March 13, 2026                    **PLC LAW GROUP, APC**

                                         /s/ *Na'Shaun L. Neal*
                                         Peter L. Carr, IV
                                         Na'Shaun L. Neal
                                         Lauren K McRae
                                         *Attorneys for Plaintiff*
                                         *Gerardo Valenzuela*

-22-
COMPLAINT